# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| SHARYL L. GLENDENNING,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of<br>the Social Security Administration,<br><br>　　　　　Defendant. | CV 18-41-BLG-TJC<br><br>**ORDER** |

On February 26, 2018, Plaintiff Sharyl L. Glendenning ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of her claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416 and 423. (Doc. 1.) On June 29, 2018, the Commissioner filed the Administrative Record ("A.R."). (Doc. 6.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking remand or reversal of Defendant's denial and an award of disability benefits. (Doc. 11.) The motion is fully briefed and ripe for the Court's review. (Docs. 12, 13.)

For the reasons set forth herein, and after careful consideration of the record and applicable law, the Court finds the ALJ's decision should be **REMANDED** for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for disability benefits on December 29, 2014.[1] (A.R. 323-326.) Plaintiff alleges she has been unable to work since April 25, 2013 due to her disabling conditions. (A.R. 323.) According to the record, Plaintiff was last insured for disability benefits on December 31, 2014. Therefore, she must establish disability on or before that date to qualify for disability benefits.

The Social Security Administration denied Plaintiff's application initially on March 13, 2015, and upon reconsideration on July 29, 2015. (A.R. 234-239.)

On August 7, 2015, Plaintiff requested a hearing on the Social Security Administration's determination. (A.R. 240.) Administrative Law Judge Michele Kelley (the "ALJ") held a hearing on October 18, 2016. (A.R. 39-73.) On November 9, 2016, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 19-38.)

---

[1] Plaintiff has twice previously filed applications for disability insurance benefits and supplemental security income. These claims were denied initially, upon reconsideration by the Appeals Council, and by written decisions issued by ALJ's on June 1, 2011 and April 23, 2013. (A.R. 74-204.)

Plaintiff requested review of the decision by the Appeals Council. (A.R. 10.) On January 6, 2018, the Council denied Plaintiff's request for review. (A.R. 1-6.) Thereafter, Plaintiff filed the instant action.

## II. LEGAL STANDARDS

### A. Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision. 42 U.S.C. §§ 405(g), 1383(c)(3). The scope of judicial review is limited. The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten*, 44 F.3d at 1457. In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the

ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

**B.  Determination of Disability**

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other substantial gainful employment which exists in the national economy. 42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing the record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)). At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III. FACTUAL BACKGROUND

### A. The Hearing

Plaintiff's hearing was held before the ALJ in Billings, Montana on October 18, 2016. (A.R. 39-73.) Plaintiff testified that she was unable to work because of bilateral tarsal tunnel syndrome with significant scarring, meniscal tear of the left knee, degenerative arthritis in both knees, and degenerative disc disease in the lumbar spine. (A.R. 46.) Plaintiff explained that her ailments prevent her from performing even sedentary work. *Id.*

Regarding her physical limitations, Plaintiff testified that she has swelling and pain in her feet. She explained that has she had multiple surgeries on her feet to alleviate her problems. (A.R. 50-51.) Plaintiff stated the pain in her left foot

returned after the surgeries, leaving her unable to stand at her job, which required her to miss work. (A.R. 51.) Her last surgery was in July 2010. *Id.*

Plaintiff also discussed how her foot problems have restricted her mobility. She testified she is only able to walk for fifteen minutes, and she can only stand for five to ten minutes. (A.R. 53.) After walking or standing she must take a break because of the pain, swelling, and imbalance associated with her leg and foot problems. *Id.* She also testified that she can sit in a chair without elevating her legs for only five minutes before sitting becomes painful. (A.R. 54.) Plaintiff explained that her left leg becomes swollen more often, and is more problematic, than her right leg. *Id.* Nevertheless, she does have problems with her right knee as well. *Id.*

Plaintiff testified that at home she elevates her legs on her ottoman "all the time" – "at least 75 percent of the day." (A.R. 55-56.) If she for some reason cannot elevate her legs, she "just deal[s] with it" by moving and stretching them. (A.R. 57.) She explained the pain she experiences is severe at times and interferes with her ability to focus. *Id.*

Plaintiff also testified that she began experiencing anxiety when her foot problems started. (A.R. 51.) She explained that when the anxiety occurs, she becomes hot, sweaty, shaky, and loses focus with her eyes. (A.R. 52.) The episodes last about fifteen minutes, and it takes her two to three hours to recover

from each episode because she is so drained. (A.R. 52-53.) She testified that these episodes occur once or twice per month. (A.R. 53.)

As to her activities, Plaintiff stated that she washes dishes with breaks, watches television, does some cleaning and laundry, and reads. (A.R. 116.) She said her husband helps her with chores and does most of the grocery shopping. (A.R. 60.) She explained she drives her husband to the grocery store because he does not have a driver's license, but she often stays in the car while he shops. *Id.* Plaintiff also indicated she drives short distances in Billings to see her family or to attend medical appointments. *Id.*

Regarding her physical abilities, Plaintiff stated she can occasionally go on walks for a distance of approximately one block. (A.R. 61.) She testified she has difficulty standing in the shower; she instead takes a bath about three times per week. (A.R. 63.) Plaintiff sweeps and vacuums about once per month and mops a couple of times per month. *Id.* She completes these activities in segments of five to ten minutes, with fifteen to twenty-minute rest breaks. (A.R. 64.)

### B. Medical Evidence

#### 1. *Paolo F. Gerbasi, MD*

Dr. Gerbasi served as Plaintiff's primary care physician from 2013-2016. (A.R. 422, 620.) Dr. Gerbasi recorded a history of low-back pain, knee pain, torn meniscus, anxiety, GERD, hip bursitis, paresthesia, insulin resistant syndrome, left

leg pain, numbness, mensural irregularities, dysphagia, and depression. (A.R. 422-24, 442, 450, 457, 463, 473-78, 485, 620.)

With respect to her back pain, Plaintiff visited Dr. Gerbasi on February 26, 2013, complaining of back pain and a burning sensation in her legs. (A.R. 473). Dr. Gerbasi had previously prescribed a muscle relaxant and corticosteroid, which Plaintiff reported relieved the burning sensation she felt in her legs but did not alleviate her back pain. *Id.* On exam, Dr. Gerbasi found Plaintiff tender at the L5-S1 joint, normal deep tendon reflexes and strength in her lower extremities, and no swelling or deformity. (A.R. 473-74.) Dr. Gerbasi ordered an MRI of Plaintiff's spine to evaluate her complaints. (A.R. 422, 424.) The MRI of Plaintiff's spine found degenerative spondylolisthesis of the lumbar spine but no evidence of acute disc herniation. (A.R. 422, 485.)

Regarding her knee pain, Plaintiff saw Dr. Gerbasi on August 6, 2014 complaining of left leg pain. (A.R. 463.) Plaintiff stated she was suffering from burning pain in her mid-thigh down to her knee and mid-shin. *Id.* On exam, Dr. Gerbasi noted "left knee shows normal passive range of motion although it is tender; tenderness to palpation palpating the medial aspect of the knee; tenderness stressing the medial ligament; tenderness stressing the medial meniscus." *Id.* Dr. Gerbasi ordered an MRI of Plaintiff's left knee to evaluate her complaints. (A.R.

464.)  The MRI of Plaintiff's knee found a tear in her medial meniscus and evidence of degenerative arthritis.  (A.R. 424.)

Plaintiff continued to complain of left knee pain on subsequent visits.  On September 13, 2016, for example, Plaintiff saw Dr. Gerbasi for menstrual problems, a facial sore, and right arm weakness.  (A.R. 633.)  During that visit, however, Dr. Gerbasi also discussed Plaintiff's left knee pain and left hip pain. (A.R. 634.)  He noted Plaintiff has a torn meniscus that she has not been able to repair.  But he noted that Plaintiff continued to have pain, and he referred her to orthopedics for a possible repair.  Dr. Gerbasi further indicated Plaintiff has some hip pain, but she did not want any steroid injections.  *Id.*

### 2.  *Paul Ouradnik, DPM*

Dr. Ouradnik has served as Plaintiff's podiatrist for over ten years.  (Doc. 637.)  He performed surgery on her right foot in 2009, and two surgeries on her left foot in 2009 and 2010.  (A.R. 135.)  From the records in the A.R., it appears he saw Plaintiff on almost a monthly basis between May 2013 and April 2016, primarily for left foot pain.

Dr. Ouradnik completed a medical source statement of ability to do work related activities on February 9, 2015.  (A.R. 437-40.)  In the statement, he opined Plaintiff could occasionally lift or carry less than ten pounds and could stand at least two hours in an eight-hour work day.  (A.R. 437.)  He also opined Plaintiff

must periodically alternate sitting and standing to relieve her pain or discomfort. (A.R. 438.)  In support of his opinion, Dr. Ouradnik stated Plaintiff "is unable to sit or stand for prolonged periods due to pain in her foot and knee.  Due to the above-mentioned pain she would be limited in the lower extremities when it comes to pushing or pulling."  *Id*.  He further opined that "climbing, balancing, and crouching are activities that exacerbate the pain and swelling to the foot.  She should be able to tolerate limited times of kneeling, crawling, and stooping."  *Id.*

Dr. Ouradnik also wrote a letter on October 13, 2016, detailing his care of Plaintiff and expressing his opinion on Plaintiff's inability to work.  (A.R. 637.)  He explained that since Plaintiff's left foot tarsal tunnel release surgery on July 16, 2010, Plaintiff has experienced pain and swelling of her left foot.  He opined that the pain and swelling have resulted in Plaintiff's inability to perform work that requires standing, walking, and sitting.  He further opined, "sedentary work is not an option for her.  She is unable to sit with her legs in a dependent position for more than 10-15 minutes.  She would require elevation to her feet and legs throughout most of the day to keep the swelling and pain under control."  *Id.*

Dr. Ouradnik identified the treatment he has prescribed to include "injections, orthotics, compression hose, anti-inflammatory patches, oral anti-inflammatories, and narcotics."  *Id.*  He noted these treatments have only provided temporary relief.  He also indicated that since her surgery in 2010, Plaintiff has

been required to elevate her feet and legs throughout most of the day to keep the swelling and pain under control. Finally, Dr. Ouradnik stated Plaintiff suffers from "chronic eczema to her feet that flares up periodically." This condition, he states, "leaves her unable to put any pressure on her feet during these flares which again will require elevation of her feet and legs." *Id.*

### 3. *Kimberlee Terry, M.D. and William Fernandez, M.D.*

Drs. Terry and Fernandez reviewed Plaintiffs medical records as non-examining state agency consultants. They did not examine Plaintiff and did not testify at the hearing. Dr. Terry submitted her evaluation on March 11, 2015, and found that Plaintiff had the residual function capacity (RFC) to occasionally lift 20 pounds, and frequently lift 10 pounds; she could stand and/or walk four hours and could sit for 6 hours in an 8-hour workday; she had unlimited capacity to push or pull (other than her lifting and limitations); and could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. Dr. Fernandez submitted an evaluation on July 23, 2015, and generally concurred with Dr. Terry's assessment.

### C. The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 25, 2013. (A.R. 24.) Second, the ALJ found that Plaintiff has the following severe impairments: "bilateral tarsal

tunnel syndrome in the left lower extremity and obesity." *Id.* Third, the ALJ

found that Plaintiff does not have an impairment or combination of impairments

that meets or medically equals any one of the impairments in the Listing of

Impairments. (A.R. 26-27.) Fourth, the ALJ stated Plaintiff has the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) as follows:
> she could lift/carry/push/pull 20 pounds occasionally and 10 pounds
> frequently; could walk and/or stand about 4 hours per 8-hour workday
> and sit about 6 hours per 8-hour workday; could occasionally climb
> ladders, ropes, scaffolds, ramps, and stairs; and could occasionally
> balance, stoop, kneel, crouch, and crawl.

(A.R. 27.)

The ALJ next found that Plaintiff cannot perform any of her past relevant

work. (A.R. 31.) Nevertheless, considering Plaintiff's age, education, work

experience, and RFC, the ALJ found there are jobs existing in significant numbers

in the national economy that Plaintiff can perform. (A.R. 31-32.) Thus, the ALJ

found that Plaintiff was not disabled. (A.R. 33.)

## IV. DISCUSSION

Plaintiff argues that the ALJ erred in the following ways: (1)[2] the ALJ

improperly discounted Plaintiff's treating physician's opinions concerning her left

---

[2] Plaintiff's "statement of issues presented for review" is difficult to reconcile with
the arguments made in her briefing. For example, Plaintiff's stated issues do not
include her left foot pain and swelling as an ailment the ALJ improperly
discounted. But Plaintiff's briefing largely focuses on that ailment. Plaintiff also
fails to clearly identify whether she is arguing that the ALJ improperly weighed her

foot pain and swelling, meniscal tearing, severe bilateral foraminal encroachment at L4-5, and degenerative disk disease; (2) the ALJ improperly discredited her testimony about her pain and limitations; and (3) the ALJ failed to incorporate all of her impairments into the hypothetical question.

## A.      Consideration of the Treating Physician's Opinions

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995.) The Commissioner applies a hierarchy of deference to these three types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id.* ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as

---

treating physicians' opinions. But she dedicates much of her briefing to that issue. The Court therefore restates the issues as articulated here.

an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600

(9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

"However, the opinion of the treating physician is not necessarily conclusive as to

either the physical condition or the ultimate issue of disability." *Id*. *See also*

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating

physician's opinion is generally afforded the greatest weight in disability cases, it

is not binding on an ALJ with respect to the existence of an impairment or the

ultimate determination of disability.").

    If the treating physician's opinion is not well-supported by medically

acceptable clinical and laboratory diagnostic techniques, or is inconsistent with

other substantial evidence in the record, it is not entitled to controlling weight.

*Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security

Ruling 96-2p). In that event, the ALJ must consider the factors listed in 20 C.F.R.

§ 404.1527(c) to determine what weight to accord the opinion. *See* Social Security

Ruling 96-2p (stating that a finding that a treating physician's opinion is not well

supported or inconsistent with other substantial evidence in the record "means only

that the opinion is not entitled to 'controlling weight,' not that the opinion should

be rejected. Treating source medical opinions are still entitled to deference and

must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The

factors include: (1) the length of the treatment relationship and the frequency of

examination; (2) the nature and extent of the treatment relationship; (3)

supportability of the opinion; (4) consistency of the opinion with the record as a

whole; (5) the specialization of the treating source; and (6) any other factors

brought to the ALJ's attention that tend to support or contradict the opinion. 20

C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675

(9th Cir. 2017).

Opinions of treating physicians may only be rejected under certain

circumstances. *Lester,* 81 F.3d at 830. To discount an uncontradicted opinion of a

treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To

discount the controverted opinion of a treating physician, the ALJ must provide

"'specific and legitimate reasons' supported by substantial evidence in the record."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157

F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a

detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions.

He must set forth his own interpretations and explain why they, rather than the

doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection

of the opinion of either an examining physician *or* a treating physician." *Lester*, 81

F.3d at 831. However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

   1.   *Did the ALJ improperly consider the opinion of Dr. Ouradnik?*

Although not clearly framed as a statement of issue for this Court's review, it appears Plaintiff argues the ALJ failed to give proper weight to the medical opinions of Dr. Ouradnik. (Doc. 11 at 15-21.) She argues there is no evidence in the record contradicting Dr. Ouradnik's opinions, and the ALJ failed to identify clear and convincing reasons supported by substantial evidence to discount his opinions.

Although Plaintiff argues the ALJ was required to provide clear and convincing reasons to discount Dr. Ouradnik's opinions, Dr. Ouradnik's opinions are contradicted by Dr. Terry's opinion. (A.R. 213.) Dr. Terry opined Plaintiff could stand or walk four-hours in an eight-hour day, and could occasionally lift twenty pounds. *Id.* In contrast, Dr. Ouradnik opined Plaintiff could stand or walk only two-hours in an eight-hour day, and could occasionally lift ten pounds. (A.R. 30.) In addition, Dr. Ouradnik stated that Plaintiff was unable to sit "with her legs in a dependent position for more than 10-15 minutes," while Dr. Terry stated that Plaintiff can sit for 6 hours in an 8-hour workday. Therefore, the ALJ must

provide "specific and legitimate reasons supported by substantial evidence in the record" to reject Dr. Ouradnik's opinion. The Court finds the ALJ failed to do so.

In her decision, the ALJ gave Dr. Ouradnik's 2015 opinion "some weight." (A.R. 30.) The ALJ discounted Dr. Ouradnik's 2015 opinion for two reasons: (1) it was provided after the date last insured; and (2) it is unsupported by the record. With respect to the latter, the ALJ found Dr. Ouradnik's treatment notes from May 2013 through December 2014 were "unrevealing" because they only included notes about Plaintiff's subjective complaints of pain and did not include "much in the way of objective findings" or note persistent swelling. *Id.*

The ALJ's first reason for discounting Dr. Ouradnik's 2015 opinion is legally deficient. The Ninth Circuit has repeatedly held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater*, 81 F.3d 821 at 832 (9th Cir. 1995) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). There is no question that Plaintiff's foot condition is not a new condition which arose after the date of last insured; it was a preexisting condition which existed for years prior to the expiration of her insured status.

As to the second reason provided, an ALJ may reject a treating physician's opinions on the basis of a conflict between the physician's opinions and his treatment notes. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). But,

here, the ALJ simply stated Dr. Ouradnik's treatment notes "merely noted [Plaintiff's] subjective reports of pain," were "unrevealing," and "never included much in the way of objective findings[.]"  (A.R. 30.)  These cursory comments fall short of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.  The ALJ also does not point to any actual inconsistency in Dr. Ouradnik's reports and records and his medical source opinion.

With respect to the ALJ's concern for the lack of objective findings in the record, Dr. Ouradnik did report that Plaintiff had "daily swelling to the left foot." (A.R. 488, 489.)  His treatment notes also document instances where her swelling had decreased as a result of treatment, indicating the foot had been more swollen on previous visits.  (A.R. 491.)  Dr. Ouradnik's notes also reflect treatment for swelling, including anti-inflammatory medications, anti-inflammatory patches, and compression stockings.  He also consistently noted Plaintiff's pain symptoms, and treated her accordingly with injections, orthotics and pain medications.  Dr. Ouradnik's treatment notes also include his observations that Plaintiff has difficulty walking and standing, and the fact that "[s]he has to sit down by the time she walks into her appointments."  (A.R. 520.)

The Court acknowledges that Dr. Ouradnik's treatment notes, though numerous, are relatively short and primarily report Plaintiff's subjective complaints of pain. Nonetheless, the ALJ simply failed to provide specific and legitimate reasons for discounting Dr. Ouradnik's 2015 opinions. As such, the Court cannot find the ALJ properly weighed Dr. Ouradnik's opinion or specifically identified a legitimate reason to reject his 2015 opinion.

As to Dr. Ouradnik's 2016 opinion, the ALJ gave it minimal weight. (A.R. 30.) The ALJ attributed less weight to this opinion because it was "somewhat" inconsistent with his 2015 opinion. (A.R. 30.) To support this finding, the ALJ stated that the 2015 opinion attributed functional limitations to pain in the Plaintiff's "bilateral feet and left knee," while his 2016 opinion only attributed functional limitations to Plaintiff's left foot. *Id.* The ALJ further stated Dr. Ouradnik's 2016 opinion regarding Plaintiff's durational sitting limitations differed from his 2015 opinion. *Id.* Finally, The ALJ discounted Dr. Ouradnik's 2016 opinion because his statement that Plaintiff's limitations began in 2010 was contradicted by Plaintiff's claim here that she was disabled beginning in April 2013. (A.R. 31.)

With respect to the first purported inconsistency, the ALJ found Dr. Ourdanik's 2016 opinion to be inconsistent with his 2015 opinion, because the 2016 opinion only discussed Plaintiff's left foot problems, while his 2015 opinioin

attributed limitations to her "bilateral feet" and her left knee. Dr. Ourdanik did treat both of Plaintiff's feet. She had surgery to her left foot in October 2009 and July 2010, and her right foot in December 2009. (A.R. 135.) Her problems with her right foot resolved after surgery; the problems with her left foot did not. *Id.* Contrary to the ALJ's statement, Dr. Ouradnik did not attribute limitations to her feet bilaterally in his 2015 opinion; he stated that her limitations on sitting and standing were due to her pain in "her foot" and her knee. (A.R. 438.) Further, in a letter dated the day after his 2015 medical source statement, Dr. Ourdanik made clear that Plaintiff's difficulties centered on "the chronic pain and swelling to her left foot." (A.R. 488.)

Additionally, while Plaintiff's knee problems were outside of his area of expertise, Dr. Ourdanik noted in 2014 that Plaintiff was having trouble with her knee, and an MRI ordered by another physician showed a torn meniscus. Thus, there is a single reference to her "left knee" in his 2015 medical source statement. Since his 2015 report, however, a review of the record indicates Plaintiff's complaints to Dr. Ouradnik exclusively concerned her left foot. (A.R. 489.)

Consequently, both before and after his 2015 opinion, Dr. Ouradnik's care and treatment of Plaintiff focused almost exclusively on her left foot. The ALJ does not explain this purported inconsistency further, and it is not clear to the

Court why this perceived inconsistency provides any basis to discount Dr. Ouradnik's 2016 opinion.

As for the second purported inconsistency, the ALJ found Dr. Ouradnik's 2016 opinion that Plaintiff "is unable to sit with her legs in a dependent position for more than 10-15 minutes" to be inconsistent with his 2015 opinion where he merely checked a box stating, "must periodically alternate sitting and standing to relieve pain or discomfort."  (A.R. 637, 438.)  The ALJ fails to adequately support her interpretation of these statements and why they are inconsistency.  The two opinions may be entirely consistent.  The 2015 opinion noted an inability to sit without alternate sitting and standing, without specifying a time limitation on Plaintiff's ability to sit.  The 2016 opinion simply provided a specific time limitation.

The final reason for discounting Dr. Ouradnik 's 2016 opinion is also not supported by the record.  Dr. Ouradnik's opinion states he performed tarsal tunnel release surgery on Plaintiff's left foot in 2010, and "since that time, [Plaintiff] has had pain and swelling to the left foot."  (A.R. 637.)  The ALJ found Dr. Ouradnik's statement that Plaintiff's limitations began in July 2010 to be inconsistent with Plaintiff's current application for benefits which alleges an onset date of April 2013.

But the record reveals that Plaintiff previously filed applications for disability benefits in 2011 and 2012, alleging the "same severe impairment of bilateral tarsal tunnel syndrome (status post release surgeries.)" (A.R. 184.) After being denied benefits in a decision dated April 23, 2013, Plaintiff filed another application for disability benefits, alleging changed circumstances. Thus, the ALJ's statement that Plaintiff did not allege disability until April 2013 is simply incorrect.

Moreover, the ALJ specifically noted in her decision that "[t]he alleged onset date has no clinical significance and was selected because it is a mere two days after a previous Administrative Law Judge denied the claimant' prior application for disability insurance benefits in a decision dated April 23, 2013." (A.R. 28.) Given the ALJ's specific recognition that the alleged onset date is tied to a prior disability decision, and not to the alleged onset of Plaintiff's disability, the ALJ's reliance on the alleged onset date to find an inconsistency in Dr. Ouradnik's 2016 opinion is puzzling.

Additionally, in determining the weight to assign to Dr. Ouradnik's 2015 and 2016 opinions, the ALJ did not consider any of the factors listed in 20 C.F.R. § 404.1527(c). The ALJ's only mention of the treatment relationship between Plaintiff and Dr. Ouradnik is the single reference to Dr. Ouradnik being a "treating DPM at Rimrock Podiatry." *Id.* The ALJ did not reference 20 C.F.R. § 404.1527,

or the factors to be considered therein. The ALJ therefore did not consider the length of the treatment relationship, the frequency of examination, the extent of the treatment relationship, or the consistency of the opinion with the record as a whole. C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6). The Ninth Circuit has determined such a failure "alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

Moreover, these may have been particularly important considerations to the ALJ's analysis in this case. Dr. Ouradnik is board certified in podiatric surgery, and has an extensive, long term treatment relationship with Plaintiff. It appears he has treated Plaintiff since 2006, and he has followed her for her foot problems since he performed multiple surgeries to her feet, the last being in 2010. Thus, at the time he submitted his first medical source statement in 2015, he had been treating Plaintiff for approximately 9 years. Additionally, it appears that Plaintiff was seen by Dr. Ouradnik on approximately a monthly basis. Therefore, he had a very lengthy, close treatment relationship with Plaintiff and would have been thoroughly familiar with her condition and her physical limitations.

Therefore, the ALJ did not properly consider or weigh Dr. Ouradnik's opinions regarding her foot condition.

Plaintiff also appears to argue the ALJ failed to consider Dr. Ouradnik's opinions related to her back problems. (Doc. 11 at 19; Doc. 13 at 9.) The Court notes first that Plaintiff does not point to any "opinions" concerning her back

ailments that she believes were not properly credited.  Rather, Plaintiff merely cites the medical records and concludes therefrom that the ALJ erred.  For example, Plaintiff argues the ALJ ignored the objective evidence of her bilateral foraminal encroachment at L4-5 and degenerative disc disease.  (Doc. 11 at 19.)  But treatment notes and medical opinions are not synonymous, and a treatment note that does not state a medical opinion is not subject to the same scrutiny applied to a medical opinion.  *Modesitt v. Astrue*, 2010 WL 37949290, *8 (C.D. Cal. Sept. 21, 2010).  Therefore, the ALJ did not improperly discount any opinion of Dr. Ouradnik regarding Plaintiff's back condition.

### B. Consideration of the Plaintiff's Testimony

Plaintiff argues that the ALJ failed to properly evaluate her testimony because the ALJ failed to provide specific, clear and convincing reasons for rejecting her testimony.  (Doc. 11 at 22.)  The Commissioner counters that the ALJ reasonably discounted Plaintiff's symptom testimony.  (Doc. 12 at 4.)

The credibility of a claimant's testimony is analyzed in two steps.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony

only if he provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or follow treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the lack of objective medical evidence into consideration when assessing credibility. *Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the first step of the credibility analysis is not at issue. The ALJ properly determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and the ALJ did not cite any evidence of malingering. Therefore, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her symptoms.

The Court finds the ALJ failed to do so.

In her decision, the ALJ states that the "claimant's testimony and allegations of disability centered on left foot pain and edema during the period after the alleged onset date." (A.R. 29.) The ALJ then pointed to notes of various visits to Plaintiff's primary care provider, Dr. Gerbasi, for unrelated general health reasons where she did not complain of foot pain. From this the ALJ concluded, "[t]hus, her alleged pain and limitations due to her left foot were likely not as severe or limiting as alleged during the period at issue, and she remained capable of work activity within the confines of the residual function capacity." (A.R. 29.)

The reasons provided by the ALJ fall short of clear and convincing reasons for discounting Plaintiff's credibility. First, the ALJ did not properly identify any specific aspects of Plaintiff's testimony she found not credible. (A.R. 29.) Rather, the ALJ generally found the Plaintiff's testimony "centered on left foot pain and edema" and then discounted the testimony in its entirety. *Id.*

Secondly, the ALJ plucked various statements made in Dr. Gerbasi's notes which do not mention foot pain, but ignores other entries in his medical record which document her foot problems. For example, the ALJ focuses on entries in the record where it was noted Plaintiff was "alert and fully oriented," and her "speech and behavior were appropriate, and her mood and affect were normal." (A.R. 29.) The ALJ also notes that on other visits "her gait and station were normal," and she

had "normal coordination, and her muscle strength, tone, and reflexes were normal." *Id.* But the ALJ then ignores other entries where Dr. Gerbasi noted that Plaintiff has "chronic foot pain after several surgeries" and she experiences "intermittent paresthesias on her bilateral lower extremities." (A.R. 450.)

Finally, the ALJ bases her credibility finding on the notes of Plaintiff's primary care provider who saw her for general health matters, but ignores that she was concurrently being treated by a specialist for her foot condition. During the period under consideration here (4-25-13 through 12-31-14), Plaintiff was seen by Dr. Ouradnik for her foot condition approximately 20 times, and her chronic foot pain and inflammation, and the ongoing treatment for her foot condition, were well documented. The ALJ cannot selectively rely on some entries in the medical record and ignore others which support finding a disability. *Holohan v. Massanari,* 246 F.3d 1196. 1207 (9th Cir. 2001).

For the foregoing reasons, the Court finds the ALJ's decision to discredit Plaintiff's testimony was not based on substantial evidence, and her generalized findings are insufficient to allow the Court to find she "did not arbitrarily discredit claimant's testimony." *Turner*, 613 F.3d at 1224 n.3. Therefore, the Court finds that the ALJ's credibility finding is unsupported by specific, clear and convincing reasons.

/ / /

### C. The ALJ's Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 189) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422.

Plaintiff argues that the hypothetical the ALJ relied on to find there are jobs she can perform did not include all her impairments. As discussed above, the Court concludes the ALJ failed to adequately explain her reasons for discounting Plaintiff's credibility and Dr. Ouradnik's opinions. Accordingly, these errors may have affected the hypothetical the ALJ relied upon, and in turn, the ALJ's determination at step five. For example, Dr. Ouradnik opined Plaintiff could only stand for two hours in an eight-hour day and later opined even sedentary work was not possible for Plaintiff. However, the RFC relied on by the ALJ required Plaintiff to stand up to four hours per day and perform light to sedentary exertional demands. (A.R. 32.) Therefore, the Court finds the ALJ's determination at step five is not supported by substantial evidence.

## V. REMAND OR REVERSAL

Plaintiff asks the Court to grant benefits, or in the alternative remand this case further proceedings. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall reconsider the weight she applies to Dr. Ouradnik's opinion and evaluate the Plaintiff's credibility in accordance with this decision.

/ / /

/ / /

/ / /

/ / /

/ / /

## VI.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. **IT IS ORDERED.**

DATED this 24th day of September, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge